EMERGENCY PROFESSIONAL GROUP, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Emergency Professional Group, Inc. v. Commissioner
Docket No. 20947-80.
United States Tax Court
T.C. Memo 1982-287; 1982 Tax Ct. Memo LEXIS 461; 43 T.C.M. (CCH) 1468; 3 Employee Benefits Cas. (BNA) 1588; T.C.M. (RIA) 82287; May 24, 1982. David M. Buda, for the petitioner. Kenneth P. Dale, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Taxable Year
Addition to Tax
Ended
Deficiency
Section 6653(a) [1]
October 31, 1976
$ 30,514.99
$ 1,525.75
October 31, 1977
34,207.73
1,710.39
Most adjustments in the notice of deficiencies have been settled by the parties and can be given effect in the Rule 155 computations. The two issues remaining for decision are (1) whether petitioner is entitled to deduct certain payments made to its pension and profit-sharing trust for the taxable years ended October 31, 1976 and October 31, 1977 and (2) whether petitioner is liable for the additions to tax under *463 section 6653(a) for both taxable years. To facilitate the disposition of these issues our findings of fact and opinion will be combined. Some of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are set forth below. Issue 1. Claimed Deductions to Pension and Profit-Sharing Trust
Emergency Professional Group, Inc. (petitioner) is a corporation duly organized and existing under the laws of the State of Ohio. Its principal place of business was located in Columbus, Ohio, when its petition was filed in this case. For the taxable years ended October 31, 1976 and October 31, 1977, petitioner filed timely U.S. Corporation Income Tax Peturns (Forms 1120) with the Internal Revenue Service Center in Covington, Kentucky. These returns were signed by Thomas E. Brock, Jr. in his capacity as Treasurer and Secretary-Treasurer, respectively. On these returns the petitioner claimed deductions for contributions paid to the Emergency Professional Group, Inc. Pension and Profit-Sharing Plan in the amounts of $ 37,833.75 for the taxable year 1976 and $ 21,365.06 for the *464 taxable year 1977. In his notice of deficiencies dated October 15, 1980, respondent, because of the petitioner's failure to produce books, records and other information, determined that during the taxable years 1976 and 1977 the petitioner's pension and profit-sharing plans and related trusts did not constitute qualified plans and trusts under section 401 and were not exempt from tax under section 501. Consequently, respondent disallowed the claimed contributions under section 404 because they did not meet the qualifications for deduction under section 404(a)(5). During the taxable years ended October 31, 1976 and October 31, 1977, Medical Management, Inc. was responsible for handling all financial matters of petitioner including collecting all of petitioner's accounts, depositing receipts in its bank accounts, writing checks, and paying salaries to petitioner's employees. Medical Management is a corporation whose president and sole shareholder was Thomas E. Brock, Jr. during taxable years ended October 31, 1976 and October 31, 1977. During the taxable years ended October 31, 1976 and October 31, 1977, there was in existence a pension and profit-sharing plan referred to *465 as "Emergency Professional Group, Inc. Pension and Profit-Sharing Plan." On August 23, 1972, two qualification letters were issued to Emergency Professional Group, Inc. Pension and Profit-Sharing Plan. On September 28, 1977, a further qualification letter was issued to Emergency Professional Group, Inc. Pension and Profit-Sharing Plan. By letters dated August 5, 1980, the District Director, Cincinnati, Ohio, provided the petitioner with preliminary notice of his intention to disqualify the pension and profit-sharing plan. By letters dated October 9, 1980, the District Director, Cincinnati, Ohio, revoked the qualification letters of Emergency Professional Group, Inc. Pension and Profit-Sharing Plan. Contributions to the plan were made during the taxable years ended October 31, 1976 and October 31, 1977, in the amounts of $ 37,833.75 and $ 21,365.06, respectively. During the period between October 31, 1974 and November 30, 1977, there was an account bearing the account number 12-5078-1 at the City National Bank and Trust Company, Columbus, Ohio, which is now Bank One of Columbus. The name listed in the bank's records for account number 12-5078-1 was Emergency Professional *466 Group, Inc., Pension Plan Profit Sharing & Trust from October 31, 1974 to June 30, 1975. After June 30, 1975, the name of the account was changed to "Medical Management, Inc. DBA EPG PP." During the audit of petitioner's Federal income tax returns for the years in issue respondent asked to examine the records with respect to account number 12-5078-1. The request was referred to Terrence Fickel, an officer (secretary) of Medical Management. Mr. Fickel did not provide the records to respondent on the ground that the bank account belonged to Medical Management and not to the petitioner. Mr. Fickel did not attempt to determine the source of the funds in account number 12-5078-1. Mr. Fickel has the specific responsibility, among others, for providing records and information to the Internal Revenue Service with respect to any audits of Medical Management's clients. Dr. Metin Ercan is petitioner's vice president and a trustee of its pension and profit-sharing trust. His duties regarding the petitioner's financial matters consist of sending records to Medical Management and countersigning checks made out by Medical Management. Dr. Ercan has never refused to sign a check made out *467 by Medical Management and he has signed blank checks on petitioner's behalf. Dr. Necdet Orhon is petitioner's president and a trustee of its pension and profit-sharing trust. There is no evidence in the record that Dr. Orhon was not authorized to sign checks on behalf of petitioner and its pension and profit-sharing plan during the taxable years 1976 and 1977. There is no evidence in the record that Dr. Orhon was aware or unaware of account number 12-5078-1. While examining petitioner's Federal income tax returns for subsequent taxable years, Revenue Agent Arthur West had a telephone conversation with Dr. Orhon. In addition to discussing Mr. West's examination, Dr. Orhon discussed the examination of petitioner's Federal income tax returns for the years in issue. During the conversation Dr. Orhon admitted to Mr. West that he knew that an asset belonging to petitioner's pension and profit-sharing trust was used as collateral for a loan to "someone." Petitioner did not offer any evidence to refute Mr. West's testimony that the conversation occurred between Dr. Orhon, who was a witness for petitioner, and Mr. West, as described by Mr. West. By various requests, summonses and *468 subpoenas the respondent attempted to obtain from petitioner and Medical Management the records with respect to account number 12-5078-1. The records were never furnished by either petitioner or Medical Management. Although petitioner did not offer any evidence at the trial pertaining to the records of account number 12-5078-1, respondent submitted evidence through Mr. John S. Patton, Senior Administrative Officer of Bank One of Columbus, consisting of bank statements issued with respect to the account for the periods from October 1974 through November 1977. These bank statements show that account number 12-5078-1 was originally in the name of "Emergency Professional Group Inc., Pension Plan Profit Sharing & Trust, 2560 W. Lane Ave., Columbus, Ohio 43221," but it was changed in July 1975 to read "Medical Management Inc., DBA EPG PP, 2560 W. Lane Ave., Columbus, Ohio 43221." The bank statements reflect frequent deposits and withdrawals by check. For example, there was a $ 30,000 deposit made on December 31, 1976, and a check withdrawing $ 30,000 on January 13, 1977; and on August 18, 1977, there were four deposits totaling $ 25,038.02 and a check withdrawing $ 24,150.01 on August 19, 1977. *469 Petitioner offered no evidence explaining the presence of the name of petitioner's pension and profit-sharing trust on the records of Bank One of Columbus for account number 12-5078-1. Nor did petitioner offer any evidence showing the source of any deposits made to the account or the payees of any checks drawn on the account. Petitioner offered no evidence explaining whether any collateralization of its pension and profit-sharing plan assets occurred and, if so, whether the terms of any collateralization were reasonable and provided for the security of the plan's assets. There is no dispute in this case that contributions were actually made to the trust. The core dispute is whether the plan was qualified under section 401(a) during the taxable years 1976 and 1977. Petitioner has the burden of proving that the requirements of section 401 were met with respect to its pension and profit-sharing plan for the years in question. Section 401(a) provides that a pension plan will qualify as an exempt trust and contributions thereto will be tax deductible if, among other things, the assets of the trust are used for the exclusive benefit of the employees or their beneficiaries. Section *470 401(a)(2) requires the plan to make it impossible for any part of the corpus or income of the trust making up the plan "to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of [the employer's] employees or their beneficiaries." Respondent offered evidence that there was an account in the name of the petitioner's pension and profit-sharing trust at Bank One of Columbus. The name of the account was changed to "Medical Management, Inc. DBA EPG PP" in July 1975. Petitioner refused to allow respondent to review the records of this account in order to determine whether the funds which were deposited therein were used for, or diverted to, purposes other than the exclusive benefit of petitioner's employees or their beneficiaries. Respondent also offered evidence that some of the assets of the plan had been utilized as collateral for a loan with respect to which the petitioner has not provided any information. Because the petitioner refused the respondent the opportunity to review its records regarding this bank account and any collateralization transaction, respondent revoked its earlier rulings that petitioner's plan *471 was qualified under section 401, and in his notice of deficiencies disallowed deductions claimed by petitioner for contributions to the plan in 1976 and 1977. The law is clear that respondent has the authority to retroactively revoke the qualification of a pension and profit-sharing plan where there have been material changes in law or facts with respect to the plan. Lowry Hospital Association v. Commissioner,66 T.C. 850, 860 (1976); Maynard Hospital Incorporated v. Commissioner,52 T.C. 1006, 1029 (1969); section 7805(b). It is also clear that respondent has the authority to examine the records of the petitioner's pension and profit-sharing plan pursuant to section 7602. Petitioner's only argument advanced in support of its refusal to provide the records of the bank account is its claim that the account in question is not owned by its pension and profit-sharing trust. Its only argument in support of its refusal to supply information regarding any collateralization of certain of its assets is a refusal to acknowledge the collateralization. In support of its claim that the bank account was not owned by the pension and profit-sharing trust, *472 petitioner offered an uncorroborated statement by its vice president, Dr. Ercan, that he had no knowledge of such an account, and the testimony of Mr. Fickel that, according to the records of his employer, Medical Management, the bank account was not owned by petitioner. This testimony, however, was rebutted by the bank statements of Bank One of Columbus submitted by the respondent. We think the uncorroborated statements of Dr. Ercan and Mr. Fickel fail to sustain petitioner's burden of proof on this matter, especially in view of the name appearing on the bank statements. See Geiger v. Commissioner,440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159. It is our view that petitioner and Medical Management, who obviously worked closely together in an almost hand-in-glove relationship, have indulged in a shell game with respondent as to the ownership and control of account number 12-5078-1. Petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent was not required to prove that the account was owned by petitioner; the petitioner must prove that it did not own it. This it has failed *473 to do on this record. If the petitioner did not own the account it could have obtained, by subpoena or otherwise, the records of the account and established the sources of the funds therein. And petitioner could have asked Mr. Brock, the president of the alleged owner, Medical Management, and also an officer of petitioner, about the source of each of the deposits made to the account and withdrawals therefrom. However, for reasons unknown to us, petitioner refused to even attempt to obtain the records and introduce them into evidence. In addition, the petitioner frustrated the respondent in his attempts to obtain such records. The inference we draw from this course of action is that the petitioner had something to hide--perhaps evidence of a disqualifying diversion of pension funds. We can only conclude that such testimony and documentary evidence, if offered by petitioner, would have been unfavorable. Interstate Circuit v. United States,306 U.S. 208, 225-226 (1939); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Morris v. Commissioner,70 T.C. 959, 1001 (1978). *474 Since the petitioner has not shown that such a diversion did not occur, we conclude that it has failed to sustain its burden of proof in this respect. Cf. Feroleto Steel Co. v. Commissioner,69 T.C. 97, 106-108 (1977). Finally, the petitioner has submitted no evidence to counter that offered by respondent with respect to any collateralization of certain assets of its pension and profit-sharing trust. Petitioner simply refused to provide any details pertaining to the collaterization of the loan mentioned by Dr. Orhon to Mr. West, despite the opportunity to do so at the trial. Therefore, petitioner has failed to prove that the terms of any collateralization were reasonable and provided for the security of the trust assets. In short, the petitioner has failed to show that the transaction was structured in such a way as to benefit the participants of the plan. In these circumstances we think the respondent had no choice but to revoke the plan's qualification letters and disallow the claimed deductions for contributions made to the trust. Accordingly, we sustain the respondent's determination. Issue 2. Section 6653(a) Additions to Tax
In his notice of *475 deficiencies respondent determined that the petitioner was liable for additions to tax for negligence or intentional disregard of rules and regulations pursuant to section 6653(a) for the taxable years 1976 and 1977. Petitioner, who has the burden of proof on this issue, offered no evidence with respect thereto. Consequently, we sustain the respondent's determination. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). To reflect our conclusions on the disputed issues and the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, unless otherwise indicated.↩